**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

WINGLET TECHNOLOGY, LLC, *et al.*,

       Plaintiffs,

   v.

UNITED STATES OF AMERICA,

       Defendant.

Civil Action No. 21-1646 (CKK)

**MEMORANDUM OPINION**
(June 13, 2022)

In this tort case, Plaintiffs Winglet Technology, LLC ("Winglet") and Robert Kiser ("Kiser") claim that Defendant Gaetano Sciortino ("Sciortino"), an employee of the Federal Aviation Administration ("FAA"), defamed them when he published an allegedly false memorandum about them. Pending before the Court is Defendant's [16] Motion to Dismiss for lack of jurisdiction and failure to state a claim. Because the Court concludes that it lacks jurisdiction over this case, it does not reach the merits. Accordingly, and on consideration of the pleadings,[1] the relevant legal authorities, and the entire record, the Court shall **GRANT** Defendant's [5] Motion to Dismiss.

## I.  BACKGROUND

Kiser is the founder and managing member of Winglet, a company operating in Kansas that designs and markets aircraft winglets for installation on specific, turbine powered, transport

---

[1] This Memorandum Opinion focuses on the following documents:
- Plaintiff's Amended Complaint, ECF No. 15 ("Am. Compl.");
- Defendant's Motion to Dismiss, ECF No. 16 ("Mot.");
- Plaintiff's Opposition to Defendant's Motion to Dismiss, ECF No. 17-1 ("Opp."); and
- Defendant's Reply in Support of Defendant's Motion to Dismiss, ECF No. 19 ("Repl.").

In an exercise of its discretion, the Court has concluded that oral argument would not be of material assistance in rendering a decision. *See* LCvR 7(f).

category aircraft.  Am. Compl. at 3.  Before being installed on an aircraft, the FAA, an agency

headquartered in Washington, DC, must certify and approve the winglets.  Winglet applied for

certification to the FAA in March 2019 to receive authorization for the Bombardier Learjet

Model 45 ("Certification Project").  *Id*. at 4.  Kiser was the lead representative and certification

coordinator for Winglet throughout the project.  *Id*. at 5.  Plaintiffs allege that Kiser openly

doubted FAA staff's abilities to "properly interpret and apply FAA regulations, policy, and

guidance material applicable to the Certification Project" in phone calls, video conferences, and

e-mails to FAA personnel.  *Id*. at 5-6.

Sciortino, a New York resident, is the Deputy Director of the Compliance and

Airworthiness Division at the FAA, which has authority over the Certification Project.  On June

25, 2020, a memorandum from Sciortino to Kiser regarding the Learjet Model 45 Winglet

Project ("Memorandum") was prepared.  ECF No. 1 at 12. Sciortino digitally signed the

Memorandum on June 26, 2020 at 3:10pm and it bore FAA letterhead.  *Id*.  The Memorandum

outlines Kiser's allegedly unprofessional communications with FAA staff, displays of

aggression, and personal verbal attacks during meetings.  *Id*.  Sciortino alleged that Kiser so

belittled and excoriated Sciortino's employees that he began to worry for their safety.  *Id*.

Sciortino also described the situation as a "potential risk to aviation safety" because

"communications, transparency and a good understanding of the work depends on a foundation

of good relations."  *Id*. at 13.

As a result, Sciortino reassigned Winglet projects from the Wichita Aircraft Certification

Office (ACO) to the New York ACO.  Plaintiffs assert that Sciortino published his allegedly

defamatory reassignment memorandum to "nearly every organizational entity within FAA

Aircraft Certification Service," although it is unclear how Sciortino "published" the

Memorandum precisely. *Id.* at 6.  Plaintiffs claim that Sciortino published the memorandum because "Plaintiffs had the temerity to disagree with or challenge the Defendant in front of other FAA employees" and did not "disagree" in the course of his employment. *Id.* at 7.

On June 21, 2021, Plaintiffs filed a complaint seeking monetary relief against Sciortino, and, on July 13, 2021, the Acting Chief of the Civil Division of the U.S. Attorney's Office certified pursuant to 28 U.S.C. § 2679(d)(2) that Sciortino acted within the scope of his office or employment at the time of the incident.  ECF No. 8.  The Government has now moved to dismiss Plaintiff's complaint for lack of jurisdiction and for failure to state a claim.  With that motion fully briefed, the Court turns to its resolution.

## II.      LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(1), plaintiff bears the burden of establishing that the court has subject matter jurisdiction over its claim.  *See Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007).  In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted).  "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1)," the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (citations omitted).

## A.  DISCUSSION

### A.  FTCA Jurisdiction

The Federal Employees Liability Reform and Tort Compensation Act of 1988 (the

"Westfall Act", codified in 28 U.S.C. § 2679) substitutes the United States as a defendant when the Attorney General or a designee certifies that the defendant federal employee acted within the scope of employment at the time of the incident which serves as the basis for the claim. 28 U.S.C. § 2679(d)(1); *Stokes v. Cross*, 327 F.3d 1210, 1213 (D.C. Cir. 2003). The Federal Tort Claims Act ("FTCA") allows individuals to recover by suing the United States for certain torts committed by federal employees who acted within the scope of their employment. 28 U.S.C. § 2674. The United States has not waived immunity for defamation or false light claims. 28 U.S.C. § 2680(h); *Council on Am. Islamic Rels. v. Ballenger*, 444 F.3d 659, 666 (D.C. Cir. 2006).

The Westfall certification establishes prima facie evidence that the employee acted within the scope of employment. *Ballenger*, 444 F.3d at 662. To challenge the certification, the plaintiff bears the burden of rebutting the government's findings and must raise a material dispute regarding the substance of the government's determination that, if true, would establish that the defendant acted outside the scope of employment. *Stokes*, 327 F.3d at 1214, 1216. Although an evidentiary hearing is sometimes necessary, it is usually more appropriate to decide the question on the papers. *Charles v. United States*, No. CV 21-0864 (CKK), 2022 WL 1045293, at *4 (D.D.C. Apr. 7, 2022). Only if the court finds that there is "a genuine question of fact material to the scope-of-employment issue should the federal employee be burdened with discovery and an evidentiary hearing." *Gutierrez de Martinez v. Drug Enf't Admin.*, 111 F.3d 1148, 1155 (4th Cir. 1997). If Sciortino acted in the scope of his employment, Plaintiff's defamation and false light claims are barred under the Federal Tort Claims Act both for failure to exhaust administrative remedies and for the lack of waiver of sovereign immunity as to those claims.

1.  Scope of Employment

Plaintiffs contend that Sciortino acted outside the scope of his employment when he published the memorandum. The legal standard for the scope of employment question is governed by the law of the place where the alleged tort occurred.  28 U.S.C. § 1346(b)(1); *Minnick v. Carlile*, 946 F. Supp. 2d 128, 131 (D.D.C. 2013), *aff'd sub nom. Minnick v. United States*, No. 13-5241, 2014 WL 590863 (D.C. Cir. Jan. 22, 2014).

The District of Columbia[2] follows the legal framework from the Second Restatement of Agency to establish scope of employment. For an employee to act within the course of his employment, the conduct must:  (1) be the kind the employee is employed to perform (2) occurs substantially within the authorized time and space limits and (3) be actuated, at least in part, by a purpose to serve the employer.[3]  The scope of employment determination is an objective inquiry centered on the totality of the circumstances.  *Weinberg v. Johnson,* 518 A.2d 985, 991 (D.C. 1986).  Although scope of employment is usually a jury question, it "becomes a question of law for the court […] if there is not sufficient evidence from which a reasonable juror could conclude that the action was within the scope of employment."  *Boykin v. District of Columbia.*, 484 A.2d 560, 562 (D.C. 1984).  The inquiry focuses on the underlying nature of the act, and not the

---

[2] Plaintiffs briefly raise a choice-of-law issue, but appear to agree that, regardless of which state law the Court applies, the distinctions between the two are immaterial.  *See* Opp. at 6 n.3  It does appear that the law of agency is substantially similar in both jurisdictions.  *See Carroll v. Trump*, 498 F. Supp. 3d 422, 444 (S.D.N.Y. 2020) (concluding that agency-law analysis was the same under D.C. and New York law); *compare also District of Columbia v. Bamidele*, 103 A.3d 516, 525 (D.C. 2014) (applying Restatement (Second) of Agency) *with Riviello v. Waldron*, 47 N.Y.2d 297, 302 (1979) (same).  However, as Plaintiffs do not meaningfully contest Defendant's application of District of Columbia law, the Court shall also apply District of Columbia law. *Cf. Palmer v. GMAC Commercial Mortg.*, 628 F.Supp.2d 186 (D.D.C. 2009) (stating that when "a party addresses some but not all arguments raised in a motion to dismiss, courts in this district treat such arguments as conceded").

[3] The Restatement lists a fourth element ("if force is intentionally used by the servant against the other, the use of force is not unexpectable by the master") that does not apply in this case.

alleged tort itself.  *Ballenger*, 444 F.3d at 664.

      The first prong of the scope-of-employment framework requires a showing that the alleged tortious conduct was of the kind of work that the defendant employee was authorized to perform.  Allegedly defamatory statements that pertain to conduct at work suffice.  *See Upshaw v. United States*, 669 F. Supp. 2d 32, 42 (D.D.C. 2009) (holding that a colleague's comments in an employee investigation at work was the kind of work the individual was employed to perform because the comments were only about work performance); *Conyers v. Westphal*, 235 F. Supp. 3d 72, 77 (D.D.C. 2017) (holding that the first prong of the framework was met because the defendant's only communications were work-related); *Charles*, 2022 WL 1045293, at *5.

      In this case, the memorandum was certainly the kind of work Sciortino was employed to perform as Deputy Director of the Compliance and Airworthiness Division at the FAA and was not just an opportunity for Sciortino to make the alleged defamatory remarks.  The Memorandum relates exclusively to Sciortino's work at the FAA and interactions with Kiser and Winglet during the Certification Project.  ECF No. 1 at 12–13.  As a federal employee overseeing the certification by the federal government, it is natural that Sciortino would respond to his employees' concerns, resolve disputes, and send memoranda relating to such matters.  *Cf. Charles*, 2022 WL 1045293 at *5 ("it strikes the Court as axiomatic that review of an employee's work is part of a supervisor's job").  All the information Sciortino references in the Memorandum refers only to incidents and information derived from his role as Deputy Director. If a federal employee's false or defamatory statements made during government investigations fall within the scope of employees' duties, *see, e.g.*, *Minnick*, 946 F. Supp. 2d at 132, then statements made during the course of an FAA certification process likely do as well.

      The second prong of the scope-of-employment framework requires a showing that the

alleged tortious conduct was made within the authorized time and space limits of work. Sciortino digitally signed the memorandum during "normal working hours," Compl., ECF No. 1 at 12, and there is no indication in the record that he published the Memorandum outside of an authorized workspace. *See Upshaw*, 669 F. Supp. 2d at 42-43. Therefore, the second prong is met.

The third prong of the scope-of-employment framework requires a showing that the alleged tortious conduct was actuated, at least in part, by a purpose to serve the employer. If an employee acts in part to serve his employer's interest, the employer will be held liable even if the act was prompted partially by personal motives, such as revenge. *See Weinberg*, 518 A.2d at 988 (holding that an argument over missing laundry that escalated to the employee shooting a customer was sufficiently plausible to be within the scope of employment because it began over a work-related dispute); *Charles*, 2022 WL 1045293 at *5. Even if the Memorandum was, as Plaintiffs argue, *in part* motivated by personal animus, no reasonable jury could find that the memorandum did not also serve at least *some* work-related purpose. *See Loc. 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. N.L.R.B.*, 735 F.2d 1384, 1395 (D.C. Cir. 1984); *Jacobs*, 724 F.3d at 222 (holding that the supervisor-defendant's allegedly defamatory comments about his subordinate-plaintiff to future employers were made in his role as her supervisor and was, as a matter of law, an act "plainly intended to benefit his employer"). Accordingly, this third prong is also met.

2. Sovereign Immunity

Although the FTCA waives the United States' sovereign immunity for certain tort suits, 28 U.S.C. § 2680(h) bars claims for intentional torts including "arising out of […] libel, slander, misrepresentation, [or] deceit[.]" *See Kugel v. United States*, 947 F.2d 1504, 1506 (D.C. Cir.

1991).  The United States has not waived sovereign immunity as to defamation and false light

claims.  *See Kugel*, 947 F. 2d at 1506 (D.C. Cir. 1991) (defamation); *Wuterich v. Murtha*, 562

F.3d 375, 379–81 (D.C. Cir. 2009) (false light); *see Charles*, 2022 WL 1045293, at *6

(defamation).  Accordingly, having concluded that Sciortino uttered the allegedly defamatory

statements during the course of his employment, the Court concludes that it lacks jurisdiction

over Plaintiffs' claims.

       3.  Exhaustion

      Because the FTCA applies here, the Court further finds that it lacks jurisdiction over

Plaintiffs' claims because they have failed to exhaust their administrative remedies.  Pursuant to

28 U.S.C. § 2675(a), a plaintiff must "first present[] the[ir] claim to the appropriate Federal

agency and [their] claim [must] have been finally denied by the agency" before filing suit.  This

requirement is jurisdictional.  *Simkins v. District of Columbia*, 108 F.3d 366, 371 (D.C. Cir.

1997).  Defendant asserts, and Plaintiffs do not contest, that Plaintiffs have failed to first present

their claims to the appropriate agency as required by the FTCA.  Accordingly, the Court also

lacks subject matter jurisdiction over this matter for lack of administrative exhaustion.

## III.    CONCLUSION

      For the foregoing reasons, the Court **GRANTS** Defendant's [16] Motion to Dismiss.  An

appropriate order accompanies this memorandum opinion.

Dated: June 13, 2022

                                 /s/
                         COLLEEN KOLLAR-KOTELLY
                         United States District Judge